NOT DESIGNATED FOR PUBLICATION

No. 114,472

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

VALENTAE ADAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed December 23, 2016. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

*Per Curiam*:  Defendant Valentae Adams appeals from the Sedgwick County District Court's denial of his motion to withdraw an *Alford* plea before he was sentenced on one count of aggravated indecent solicitation of a child. Adams contends his lawyer failed to adequately represent him leading up to the plea and he felt pressured to agree to the plea the morning his jury trial was set to begin. After an evidentiary hearing, the district court rejected Adams' claims, finding he was competently represented and voluntarily entered his plea. We discern no error in the district court's ruling and, therefore, affirm.

1

The Sedgwick County District Attorney charged Adams with aggravated indecent liberties with a child, an off-grid felony violation of K.S.A. 2015 Supp. 21-5506(b)(3)(A) that carries a life sentence. We need not recount the circumstances underlying the charge in any detail and mention only that Adams was alleged to have victimized a female relative, who was then 4 years old. The court-appointed lawyer representing Adams worked out an agreement with the prosecutor calling for Adams to enter an *Alford* plea to aggravated indecent solicitation of a child, a severity level 5 person felony violation of K.S.A. 2015 Supp. 21-5508(b). Given Adams' anticipated criminal history, the sentencing range for the amended charge was 31 to 34 months in prison. Under the plea arrangement, the prosecutor could ask for the maximum sentence, while Adams reserved the right to argue for any lawful sentence. In an *Alford* plea, a defendant maintains his or her innocence (or at least doesn't admit guilt) but pleads guilty anyway, typically to take advantage of a beneficial sentencing arrangement. See *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Ebaben*, 294 Kan. 807, 807, 281 P.3d 129 (2012).

The district court accepted Adams' plea at a hearing and scheduled a sentencing date. Before sentencing, Adams filed a motion to withdraw his plea. The district court then appointed a new lawyer to represent Adams and held an evidentiary hearing on the motion. Both Adams and his original lawyer testified at the hearing. The district court denied the motion and ultimately sentenced Adams to serve 31 months in prison followed by lifetime postrelease supervision. Adams has appealed and asserts as his sole issue the denial of the motion to withdraw the plea.

A defendant may withdraw a guilty plea before sentencing in the discretion of the district court upon a showing of good cause. K.S.A. 2015 Supp. 22-3210(d)(1). District courts should look at three primary factors to determine if a defendant has shown good cause to withdraw a plea: (1) whether the defendant was represented by competent

counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (noting that these factors—commonly known as the *Edgar* factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]— establish a sound benchmark); *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010). All three factors need not favor the defendant to warrant relief from a plea, and the district court may consider other relevant circumstances based on the facts of the particular case. See *Garcia*, 295 Kan. at 63 (district court not confined to *Edgar* factors); *Williams*, 290 Kan. at 1054 (all of the *Edgar* factors need not favor defendant; court may consider other circumstances); *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). In assessing the competency of defense counsel, the district court can find "lackluster" advocacy sufficient to show inadequate representation—a standard considerably more relaxed than the one for constitutionally deficient representation. See *Aguilar*, 290 Kan. at 513.

Because the governing statute expressly affords the district court discretion in ruling on a defendant's motion to withdraw a plea before sentencing, an appellate court reviews the determination for abuse of discretion. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009). A district court may be said to have abused its discretion if the result reached is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). That is, no reasonable judicial officer would have come to the same conclusion if presented with the same record evidence. An abuse of discretion may also occur if the district court fails to consider or to properly apply controlling legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). A district court errs in that way when its decision "'goes outside the framework of or fails to properly consider statutory limitations or legal standards.'" 288 Kan. at 299 (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). Finally, a district court may abuse its discretion if a factual predicate necessary for the challenged judicial

decision lacks substantial support in the record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011) (outlining all three bases for an abuse of discretion).

On appeal, Adams says his original trial lawyer did not prepare for trial and, thus, inadequately represented him. And he says his lawyer made no effort to secure civilian clothing for him to wear in front of the jury, so when he was presented with the plea offer the morning of trial, he thought he would have to wear the jail uniform during the trial. Adams also contends the poor legal representation and lack of civilian attire together effectively coerced him to accept the plea arrangement.

At the hearing on the motion to withdraw his plea, Adams testified that his original lawyer met with him just three times before trial. Adams explained that, as a result, he considered the lawyer insufficiently prepared to try the case properly. He told the district court his lawyer made comments he construed to indicate her lack of interest in his case or an unwillingness to advocate effectively for him. Adams also said he believed he would have to wear the jail uniform in front of the jury. The original lawyer testified that she actually had met with Adams four times. She said she had two investigators working on the case and was prepared to go to trial. The lawyer denied making the comments Adams attributed to her. The district court did not specifically address that conflict in the evidence. The lawyer also testified she told Adams she would have civilian clothes for him. The lawyer explained that had the plea failed for some reason, she had sufficient time to get the clothing to Adams before jury selection would have begun that afternoon.

On appeal, Adams pitches his argument principally at the first *Edgar* factor addressing the competency of counsel and submits the limited number of visits he had with his original lawyer translates to lack of preparation and, in turn, incompetence. But we reject that equivalence. There is no direct or automatic correlation between the number of client meetings and preparedness for trial or overall competence. Here, Adams'

4

lawyer had investigators working on the case. Although there was a lengthy gap between the early and later meetings Adams had with his original lawyer, an investigator met with him in between. The investigators also spoke with several potential trial witnesses.

The lawyer secured what looked to be a favorable plea bargain for Adams that would likely result in his serving less than 3 years in prison as compared to a life sentence on the initial charge. All of that points toward a competent lawyer doing his or her job. Adams does not suggest some compelling defense his lawyer left unexplored. Nor does he identify specific things his lawyer refused to do despite his request or things his lawyer simply should have done in defending him but didn't. The district court correctly concluded the limited number of meetings between Adams and his original lawyer—whether three or four—failed to show inadequate or lackluster representation.

During the plea hearing, the district court inquired of Adams if he knew of any reason his plea should not be accepted. Adams told the district court he did not. And later during the hearing, he told the district court he made the decision to plead to the reduced charge freely and voluntarily. Adams also said he was satisfied with his legal representation. Those statements cut against the arguments Adams made in the district court for withdrawing his plea and support the district court's ruling denying the motion. Adams has never argued he failed to understand the legal implications of the plea to the reduced charge or the potential sentence he might receive as a result.

We find Adams' argument that he felt coerced into taking the plea agreement rather than going to trial because he thought he would have no civilian clothing to wear in front of the jury to be similarly unavailing. Adams said nothing during the plea hearing to suggest he was coerced in any way and certainly did not specifically mention the lack of civilian clothing. Likewise, his original lawyer testified at the hearing on the motion that she had informed Adams he would have civilian clothes for trial. Adams never suggested he was told otherwise.

In ruling on Adams' motion to withdraw the plea, the district court identified and analyzed the *Edgar* factors. The district court also made a number of factual findings in explaining the decision to deny the motion. Those findings appear to be consistent with the evidence, and Adams does not argue otherwise. In short, the district court understood the governing legal principles and accurately perceived the relevant record evidence in reaching its decision. The remaining consideration on appeal is whether that ruling represents an abuse of discretion because it is so far afield that no reasonable judicial officer would have come to the same conclusion. We comfortably say the decision fell within the broad discretion afforded district courts in weighing motions to withdraw pleas before sentencing.

Adams failed to establish good cause with respect to any of the *Edgar* factors or any other considerations bearing on his decision to enter an *Alford* plea to the reduced charge. The record evidence shows:  Adams' original lawyer adequately represented him and secured a favorable disposition of the case; Adams was neither coerced nor otherwise taken advantage of in the plea proceedings; and Adams understood the plea. We discern no abuse of discretion in the district court's ruling denying the motion to withdraw the plea.

Affirmed.