NOT DESIGNATED FOR PUBLICATION

No. 118,648

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER LEE HERRING,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed March 29, 2019. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MALONE and POWELL, JJ.


PER CURIAM: Christopher Lee Herring appeals the district court's denial of his presentencing motion to withdraw his no contest plea to one count of robbery and one count of aggravated assault. On appeal, Herring contends that the district court abused its discretion by using an incorrect legal standard in denying his motion. Based on our review of the record, we conclude that even though the district court partially misstated the legal standard, this error was harmless because the district court made findings on the record that trial counsel's representation of Herring was effective, competent, and reasonable. Moreover, the district court expressly found that trial counsel did a good job

1

in their representation of Herring. As such, the district court made adequate findings—which are supported by the record—to establish that trial counsel's advocacy on behalf of Herring was not lackluster. Thus, we affirm.

FACTS

Due to the limited issue presented on appeal, we will not set forth the underlying facts in detail. In summary, Herring was charged with aggravated robbery arising out of an incident in which a Family Dollar store was robbed at gunpoint in November 2016. The district court appointed Brandon Hottman to represent Herring. Prior to trial, Herring filed multiple pro se motions, including several motions to replace Hottman as his attorney. In denying the motions to replace defense counsel, the district court told Herring, "It's clear to me . . . that you want to dictate trial strategy."

On May 2, 2017, after voir dire but before the jury was sworn, Herring decided to plead no contest to amended charges of robbery and aggravated assault. At his plea hearing, Herring represented to the district court that he was changing his plea after learning that the State would be presenting as evidence an incriminating phone call he had made to his sister from the jail. The district court went on to review Herring's rights, the charges against him, and the possible consequences of entering a no contest plea.

Herring told the district court that he understood his rights and that the plea was voluntarily made. In addition, Herring acknowledged that he had read and signed the plea agreement acknowledging his rights. He also confirmed that his attorney had reviewed the plea documents with him and explained the consequences of signing them. After Herring advised the district court that he had no questions, he entered a plea of no contest. The district court accepted the plea and found Herring to be guilty of robbery and aggravated assault.

2

Prior to sentencing, Herring filed a pro se motion to withdraw his plea. In his motion, he claimed—among other things—that his trial counsel was ineffective. As such, the district court appointed a new attorney to represent Herring on the motion. The new attorney filed another motion to withdraw plea in which he expanded on Herring's allegations. On August 3, 2017, the district court held an evidentiary hearing on the motion to withdraw plea.

At the hearing, Herring testified that he was innocent and that a jury could not convict him because of discrepancies between video evidence and eyewitness' testimony at the preliminary hearing. Herring also testified that Hottman only visited him once at the jail and he had the impression that Hottman did not listen to him. As such, Herring claimed that Hottman would not have been prepared for trial. Herring further testified that he had given Hottman names for alibi witnesses but he believed the investigator retained on his behalf "wasn't trying to help [him] with [his] case."

In addition, Herring testified that he believed he would have been acquitted at trial. Moreover, Herring claimed that Hottman told him that if he entered a plea he would be given presumptive probation based on the sentencing grid. Notwithstanding his statements on the record at the plea hearing, Herring indicated he did not fully understand the plea agreement. Specifically, Herring claimed that Hottman gave him contradictory information about his potential sentence.

On the other hand, Hottman testified that he visited Herring seven times— approximately once a month—while the case was pending. He confirmed this with a contact log sheet that he kept and maintained. Hottman also testified that his meetings with Herring lasted anywhere between 10 to 30 minutes depending on the topic to be discussed. He testified that he discussed with his client "the facts of the case, plea offers . . . [as well as] weaknesses, pros and cons of the case."

3

Hottman testified that he investigated the possibility of presenting evidence of an alibi but ultimately chose not to pursue the defense because he did not believe it was viable. In particular, he testified that he could not verify the alibi or anchor it in time to any specific event. Likewise, Hottman testified that he never told Herring that the presumptive sentence was probation. Furthermore, he represented to the district court that he read the plea agreement to Herring in its entirety and spent 45 minutes to an hour going over it with his client. Hottman's cocounsel also testified and agreed that using an alibi defense would have been "a bad idea."

Four days later, the district court issued its ruling on the motion to withdraw plea from the bench. Herring appeared in person and by his attorney. In denying the motion, the district court applied the factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). Specifically, the district court found that Hottman and his cocounsel had "provided competent and effective representation of Mr. Herring." The district court further found that Hottman "did a good job for his client." In addition, the district court did not find credible evidence to support Herring's claim that he was misled, coerced, or unfairly taken advantage. Finally, the district court found that Herring failed to prove that his plea was not fairly and understandably made.

In accordance with the plea agreement, the district court sentenced Herring to 43 months' imprisonment for robbery and 13 months' imprisonment for aggravated assault. Furthermore, the district court ordered that the two sentences were to be served concurrently. Thereafter, the district court granted Herring leave to file a notice of appeal out of time.

ANALYSIS

The sole issue presented on appeal is whether the district court abused its discretion in denying Herring's motion to withdraw his plea before sentencing. Prior to

4

sentencing, a district court may permit a defendant to withdraw his or her guilty or no contest plea "for good cause shown and within the discretion of the court." K.S.A. 2018 Supp. 22-3210(d)(1). As the movant, Herring has the burden to establish good cause and to show that the district court abused its discretion. See *State v. Brown*, 46 Kan. App. 2d 556, 562, 263 P.3d 217 (2011). A district court abuses its discretion only if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016).

In determining if a defendant has shown good cause to withdraw a plea, the district court must decide: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (noting that these considerations—commonly known as the *Edgar* factors—establish a sound benchmark); *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010). A district court may also consider other relevant circumstances based on the facts of the particular case. See *Garcia*, 295 Kan. at 63.

The first *Edgar* factor looks at the competence of the defendant's legal representation leading up to the plea and weighs both the quality of the representation as well as its effect. To satisfy this factor, the defendant must show the representation amounts to "lackluster advocacy," which is a less demanding standard than the incompetence required to violate the right to counsel under the Sixth Amendment to the United States Constitution. See *State v. Schaefer*, 305 Kan. 581, 589, 385 P.3d 918 (2016) (citing *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 [2010]). Moreover, the defendant must show prejudice as a result of the substandard representation. In the context of a motion to withdraw a plea, the defendant must establish he or she would

5

have gone to trial rather than having entered the plea. *State v. Richardson*, 307 Kan. 2, 6, 404 P.3d 671 (2017).

Here, the district court concluded that competent counsel represented Herring. In a 15-page ruling, the district court reviewed the evidence presented at the evidentiary hearing and found "that Mr. Hottman, along with [his cocounsel] provided competent and effective representation of Mr. Herring." Regarding the decision not to present an alibi defense, the district court noted that it was "a strategic, tactical, technical, and professional decision that rests with Mr. Hottman. Furthermore, Mr. Hottman thoroughly and capably vetted the facts" and "made a strategic decision not to pursue this defense."

Likewise, the district court found that Herring "was not at any time told he was being convicted of a severity level six crime or that he was presumptive probation." Regarding Herring's allegation that his attorney rarely visited him in jail, the district court found that Hottman "saw defendant seven times, basically once per month. Mr. Hottman provided competent and reasonable representation." The district court also found that Hottman "provided defendant with discovery, showed him the video early on, . . . engaged an investigator[,]. . . spent the requisite time preparing pretrial motions, organizing a trial notebook or binder, . . . and generally preparing for trial."

Returning to the alibi defense, the district court found that Hottman "followed up" by speaking "to [Herring's] sister more than once and had his investigator follow up with [her], as well as others, but the sister could not provide an adequate recollection or evidence sufficient to anchor the defense." In addition, the district court found that Hottman "decided the evidence did not meet the legal requirement to go forward" and "that to do so would hurt the credibility of the defendant's other theories of defense . . . ." Thus, the district court concluded that this was "a most reasonable legal decision." In summary, the district court concluded that Hottman "did a good job for his client."

6

We find the district court's findings to be supported by the evidence in the record on appeal. Herring failed to establish incompetent representation by Hottman and his co-counsel. Instead, the district court found that Hottman's performance on behalf of Herring to be "effective," "competent," "reasonable," and "capabl[e]." In fact, after hearing the evidence, the district court concluded that Hottman was not only competent but that he had done a "good job" in representing Herring.

Nevertheless, Herring contends that "[w]hile the district court correctly applied the *Edgar* factors to some of [his] claims, it failed to do so in regard to Mr. Hottman's decision to not proceed with an alibi defense . . . ." In particular, Herring argues that the district court failed to apply the "lackluster advocacy" standard set forth in *Aguilar*, 290 Kan. at 513. Instead, Herring argues that the district court applied "the higher constitutional standard for ineffective assistance of counsel" set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Based on our review of the record, it appears that Herring is likely correct. Although the district court applied the "good cause" provision of K.S.A. 2017 Supp. 22-3210(d)(1) and analyzed the *Edgar* factors, it did not mention *Aguilar* or the "lackluster advocacy" standard in its ruling. It did, however, state that "Hottman's representation clearly meets the objective standard of reasonableness." Accordingly, we must conclude that the district court erred as a matter of law by failing to articulate a recognition that "lackluster advocacy" may be sufficient to establish good cause under K.S.A. 22-3210(d).

Regardless, we find this error to be harmless in light of our review of the entire record and the specific findings made by the district court after hearing the evidence presented at the motion hearing. See *Edgar*, 281 Kan. at 37-38 (citing *State v. Trotter*, 218 Kan. 266, 269, 543 P.2d 1023 (1975) ["While we do not approve of any failure to comply strictly with the explicitly stated requirements of K.S.A. 22-3210, it does not follow that every deviation therefrom requires reversal."]). As indicated above, the

district court not only found that Herring's attorneys met the objective standard of reasonableness but also expressly found that they were "competent," "effective," "capabl[e]," and had done a "good job" in representing Herring. Each of these findings reveal that the district court concluded that counsel's performance exceeded the "lackluster advocacy" standard set forth in *Aguilar*.

On the one hand, the dictionary defines "lackluster" to mean "lacking energy or vitality; boring, unimaginative, etc." Webster's New World College Dictionary 812 (5th ed. 2014). On the other hand, the dictionary defines "effective" to mean "having an effect; producing a result" or "producing a definite or desired result." Webster's New World College Dictionary 464 (5th ed. 2014). Accordingly, we find that any error committed by the district court was harmless because the record conclusively shows that the representation of Herring provided by Hottman and his cocounsel was far from lackluster.

We, therefore, conclude that Herring did not establish good cause to withdraw his plea prior to sentencing and that the district court did not abuse its discretion in denying Herring's motion.

Affirmed.